UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 8:16-cr-151-T-24-TGW

**NICSON YOVANNI QUINONEZ SANDOVAL**
_____/

### DEFENDANT QUINONEZ' SENTENCING MEMORANDUM AND MOTION FOR VARIANCE

Mr. Nicson Yovanni Quinonez Sandoval, by and through undersigned counsel, respectfully files this sentencing memorandum requesting a downward variance from the Guidelines range correctly calculated by the Probation Office as **135–168** months.  *See* Presentence Investigation Report ("PSR"), ¶ 54.  If the Court grants a departure or variance downward of two levels, the advisory range would be **108–135** months (with a minimum mandatory **120** months).  It is respectfully submitted that even 108 months is *more* than required to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).  Grounds therefore are as follows:

### I.  Background

Nicson Yovanni Quinonez Sandoval was born in San Lorenzo, Ecuador in March 1987.  He grew up very poor, forced to begin work to support the family at age 15.  At the time of this offense, he was living with his wife and two young children in a two-

bedroom house with no running water or electricity, and supported them on $250/month earned through working on a plantation and fishing. PSR, ¶¶ 39–42, 51.

Mr. Quinonez has no prior criminal record. He immediately admitted to this offense, fully cooperated with authorities and signed a plea agreement as soon as he was given the opportunity. He served as a crewmember on this small vessel under the supervision of co-defendant Juan Carlos Velez Estupian. *See* PSR, ¶¶ 5, 13–15, 31. Mr. Quinonez was motivated solely by a promised financial reward for his service. He has taken full responsibility for his conduct and the impact on his family, and he is extremely remorseful.

## II.  Objection to the Presentence Report (PSR)

Mr. Quinonez' only unresolved objection to the advisory Guidelines range computed in the PSR is that Probation should have applied a two-level reduction to the offense level to reflect the Defendant's minor role in the offense pursuant to USSG §3B1.2(b). This objection impacts paragraphs 24, 30 and 54. The November 2015 amendments to the Sentencing Guidelines provide added support for the minor role reduction in this case.

   a. **The Sentencing Commission amended §3B1.2 because courts were not applying the reduction as often as the Commission intended.**

Mr. Quinonez objects to paragraph 24 insofar as it does not recommend a two level downward adjustment to reflect his mitigating role in the offense pursuant to USSG §3B1.2(b). The two-level reduction is appropriate here because Mr. Quinonez was a minor participant in the criminal conspiracy covered by Count One of the Indictment. Notably, the U.S. Sentencing Commission amended the Application

Notes to §3B1.2, effective November 1, 2015, finding that the "mitigating role is applied inconsistently and more sparingly than the Commission intended." The added language to §3B1.2 makes it clear that the adjustment can and should apply in a case like this where a defendant is substantially less culpable than the average participant even if he performed "an essential or indispensable role" in the crime. §3B1.2, App. Note 3(C).

Furthermore, Application Note 3(A) was modified to ensure that sentencing courts can still apply the adjustment to "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or under §1B1.3 only for the quantity of drugs the defendant personally transported or stored." In light of the recent amendment, the mere fact that similarly situated defendants in past maritime drug smuggling cases might not have received the downward adjustment should not prevent its application in this case.

 **b. Mr. Quinonez' conduct fits squarely within the confines of §3B1.2(b), as amended.**

The amended Application Note 3(C) includes a "non-exhaustive" list of factors for the court to consider:

>   i)   the degree to which the defendant understood the scope and structure of the criminal activity;
>
>   (ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
>
>   (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

> *(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;*
>
> *(v) the degree to which the defendant stood to benefit from the criminal activity.*
>
> *For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.*

§3B1.2, App. Note 3(C). In this case, Mr. Quinonez did not plan or organize the conspiracy and did not exercise any significant decision-making authority or discretion. His role was confined to that of a crew member, not the captain, and he did not have a "proprietary interest in the criminal activity" but rather was "simply being paid to perform certain tasks."

Therefore, his role in the offense is precisely the type of role the Commission had in mind when it amended §3B1.2 to encourage courts to apply the adjustment more frequently. Mr. Quinonez is not attempting to convince the Court that his role in the offense was trivial or inconsequential. Rather, he submits that in the parlance of §3B1.2(b) he was less culpable than the average participant and therefore eligible for the two-level reduction in offense level. His role in the offense was necessary in that every vessel needs a crew, however, he exercised no control or discretion over the planning or execution of the conspiracy and did not stand to profit from the conspiracy beyond being paid for his limited services.

    c.  **The Eleventh Circuit's *en banc* opinion in *De Varon* does not foreclose application of §3B1.2(b) in this case.**

*De Varon* stands for the proposition that the district court needs to weigh the case-specific facts to determine whether a given defendant should receive a mitigating role adjustment. The *en banc* Eleventh Circuit was careful to reject any bright-line rule for applying the role adjustment in drug courier cases: "[w]e do not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal." *United States v. Rodriguez De Varon*, 175 F.3d 930, 944-45 (11th Cir. 1999) (*en banc*). Along similar lines, *De Varon* did not lay down an edict that cases involving a substantial amount of drugs transported are precluded from the application of a mitigating role reduction. *Id*. (finding that drug amount is a "relevant factor" and "may be dispositive" in some cases). All *De Varon* instructs this Court to do is to conduct a "uniquely fact-intensive inquiry" in light of two guiding principles: 1) to consider the defendant's role in the relevant conduct he has been held accountable for under the Guidelines; and 2) to consider his role as compared to that of other participants in the relevant conduct. *Id*. at 944-45.

    Unlike the defendant in *De Varon* who was convicted of the crime of importing heroin, Mr. Quinonez was convicted of the crime of conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine. Thus, where De Varon committed the "simple crime consisting of nothing more than the act of bringing drugs into this country," Quinonez committed the continuing offense of conspiracy which by law involves at least one other culpable participant. *Id*. at 947-48 (Carnes, J. concurring). Simply put, the Defendant was a minor participant in the

scheme charged in Count One.

When compared to the average participant in the conspiracy charged in this case, Mr. Quinonez' role was clearly inferior. In conducting the "average participant" analysis, the Court can include both charged and uncharged conspirators. *De Varon*, 175 F.3d at 944-45. As for Count One, the Indictment clearly contemplates that the conspiracy included more participants than simply Messrs. Quinonez, Paredes and Velez, for it alleges that the three defendants "…did knowingly and willfully combine, conspire, and agree with each and <u>with other persons unknown to the Grand Jury</u>, to possess with intent to distribute and to distribute five (5) kilograms or more of [cocaine] …" (Doc. 1) (emphasis added). These unnamed "other persons" were involved in planning and controlling the entire conspiracy and provided instructions and orders to the crewmembers charged in this case. The fact that these conspirators where not physically present on the vessel when it was apprehended by law enforcement does not in any way diminish the importance of their role in the conspiracy in comparison to Mr. Quinonez' limited role as a mariner.

Reading the principles announced in *De Varon* in conjunction with the amended Application Notes to §3B1.2, the Court could properly conclude that Mr. Quinonez qualifies for the two-level reduction for minor role. That finding of fact can only be reversed on appeal if it is found to be clearly erroneous. *De Varon*, 175 F.3d at 937-38. Prior to the recent amendment, district courts may have been reluctant to apply the reduction to cases where the amount of drugs at issue made a particular defendant's role "important or essential." *Id*. at 942-43. That hesitation is no longer

necessary: "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative…if he or she is substantially less culpable than the average participant in the criminal activity.*"* §3B1.2, App. Note 3(C).

### d. Applying §3B1.2(b) would result in a total offense level of 31.

The impact of granting the Defendant's objection would be to reduce his total offense level from 33 to 31. With an offense level of 31 and criminal history category I, the advisory Guidelines range should be **108–135** months of imprisonment, with a minimum mandatory sentence of **120** months.

### III. Motion for Variance

As the Court is aware, the Guidelines are no longer mandatory and may not be presumed reasonable. *United States v. Nelson*, 555 U.S. 350 (2009). Indeed, there are ". . . many instances where the Guideline range will not yield a reasonable sentence . . ." *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006). This case is such an instance where the Guideline range computed in the PSR would yield an unreasonable sentence. Consideration of the factors addressed in Section 3553(a) supports a sentence well below the advisory guideline range recommended in the PSR. Mr. Quinonez contends that each sentencing factor weighs in favor of a sentence below the advisory Guideline range, but for the purposes of this memorandum focuses on the following.

The offense of conviction in this case is a serious offense carrying serious consequences for those who violate the law. That said, a review of the nature and characteristics of the Defendant and the circumstances that led him to commit the

offense reveals a man who does not need to be imprisoned for ten or more years. Mr. Quinonez chose to join this criminal venture for financial reasons due to his struggles. Now, in addition to facing a significant term of imprisonment, he has had limited contact with his loved ones back in Ecuador. Given his heartfelt acceptance and recognition of personal responsibility and commitment to family, Mr. Quinonez is unlikely to re-offend upon returning home; his ordeal to date has impressed upon him the consequences of his conduct.

Mr. Quinonez has no prior criminal record and he played a minor role in the drug smuggling conspiracy charged in Count One. He certainly did not plan or organize the venture nor did he stand to share in a portion of the fruits of a successful operation. There was no violence used or even contemplated during the course of the crime. He simply served as a crewmember on a vessel transporting someone else's drugs to their immediate destination.

The Court is fully able to promote respect for the law, protect the public, and afford adequate deterrence by imposing a sentence less than 135 months in this case. Even if the Court accepts the Defendant's arguments that a below guideline sentence is appropriate in this case, Mr. Quinonez still faces several years of imprisonment. The premise that even minor actors in the maritime drug smuggling industry will receive several years of imprisonment in a foreign country if captured serves these ends of sentencing when viewed in relation to the other factors. Moreover, recent scholarship indicates that the length of a given defendant's sentence has little specific or general deterrent effect. *E.g.*, Nagin, Daniel S., "Deterrence in the Twenty-First

Century," in Crime and Justice in America: 1975-2025, ed. M. Tonry, Chicago, Ill.: University of Chicago Press, 2013: 199-264.[1] Rather, factors such as the likelihood of getting caught result in a greater deterrent effect than the relative sentence length. (*Id*. at 253) (suggesting that "lengthy prison sentences cannot be justified on deterrent grounds, . . .").

In recent years district courts have imposed non-Guideline range sentences in the majority of powder cocaine trafficking cases. For fiscal year 2013, only 44.7% of powder cocaine trafficking defendants received a within range sentence.[2] The average sentence for powder cocaine trafficking defendants was **79** months for fiscal year 2013, which is **56** months below the low end of the Guidelines computed in the PSR for Mr. Quinonez. Although many below Guideline sentences are based on government motions for downward departures based on substantial assistance, the fiscal year 2013 data reveal that 18.5% of below range sentences for powder cocaine traffickers were not sponsored by the government. Mr. Quinonez is a first-time offender who played a minor albeit necessary role in this offense.

---

[1] The National Institute of Justice (NIJ) – "the research, development and evaluation agency of the U.S. Department of Justice" – agrees with Nagin's conclusions on deterrence finding that certainty of being caught is a vastly more effective deterrent than imprisonment and that prison sentences are ineffective at deterring crime (and may be counterproductive), found at http://nij.gov/five-things/pages/deterrence.aspx

[2] Found at: http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Powder_Cocaine.pdf

**WHEREFORE,** Nicson Yovanni Quinonez Sandoval respectfully requests that this Honorable Court grant a two-level reduction in his offense level for his minor role and/or vary downward from the recommended Guidelines sentence of **135–168** months, to impose a sentence of not more than **120** months' imprisonment.

Respectfully Submitted,
*S/Christophir A. Kerr*
Christophir A. Kerr, Esq.
Florida Bar No. 72041
13801 Walsingham Rd., #A-154
Largo, FL 33774
(727) 492-2551 - telephone
(727) 593-9822 - facsimile
E-mail:  christophirkerr@gmail.com


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing has been furnished by Electronic Filing to Sheryl L. Loesch, Clerk of the Court, U.S. District Court, Middle District of Florida, located at U.S. Courthouse, 801 N. Florida Ave., #223, Tampa, FL  33602-3800 on this 12th day of September, 2016.

*S/Christophir A. Kerr*
Christophir A. Kerr, Esq.

-10*-